MilligaN, J.,
delivered the opinion of the Court.
This is a motion in the Chancery Court at Columbia, against the late Sheriff of Maury County,, and his sureties in his official bond, for an insufficient return of process, which issued from said Court. The Chancellor sustained the motion, and rendered judgment against the Sheriff and his securities, for the sum of $891.73; from which the defendants have appealed in error to this Court.
The facts necessary to be noticed, are, briefly, as follows: In 1861, a judgment was rendered in the Chancery Court of Maury County, in favor of the Clerk and Master of said Court, for $1,141.90, with costs, against J. W. Witherspoon and others; upon which execution thereafter issued, on the 15th day of November, 1861, returnable to the March Term, 1862. On the same day the execution issued, it came to the hands of the defendant, Crosby, as Sheriff .of the county, who, afterwards, on the 20th of March, 1866, returned it indorsed: “Satisfied in full in Confederate Treasury Notes.”
Prior to the return of the process, the execution debtor paid a portion of the judgment, which was *244 regularly entered upon tbe execution docket; but, as it appears from tbe record, tbe Clerk and Master refused to receive the Confederate Treasury Notes returned with tbe process, and now brings bis motion against tbe Sheriff and bis sureties, for an insufficient return.
Various questions have been raised in argument, and insisted on with much earnestness.
1st, It is assumed that the remedy, by motion, for tbe non-return, or an insufficient return, of an execution, is expressly abolished by the Act of 1861, ch. 8, sec. 4. The Act relied on was passed the 2d o^ February, 1861, and is in the following language:
“Sec. 4. Be it enacted, That the remedy by motion for the non-return, or insufficient return of executions, is hereby, repealed; but this Act shall apply only to cases where the debtor avails himself of the benefits of An Act, passed January 26, 1861, {To provide a remedy for the collection of debts, and for the relief of the. people.’ And it shall not apply when the money has been collected; and shall cease to be operative on the first day of July, 1862. This Act shall take effect from and after its passage.”
The Act to which the section just quoted refers, provides, among other things, for the stay of execution upon all judgments and decrees for money, rendered in any Court of record, or by any Justice of tbe Peace, for the period of twelve months. How then, is the fourth section of the Act of, 1861, ch. 8, to be understood?
Admitting for the present, both Acts are constitutional, it is insisted, that the remedy by motion, is highly *245 penal, and that' all statutes in relation thereto must be construed strictly.
This Court has uniformly held, that Acts authorizing judgments by motion, must be taken strictly. They are in derogation of the common law remedy on the officer’s official bond, and are never extended beyond the ca@es provided for, although other cases may fall within the reasons for which they were enacted: Baker & Hunter vs. Agey, 2 Hum., 13-15; Rice vs. Kerkman, 3 Hum., 415; Smith vs. Wells, 5 Yer., 202-3.
But, while the Courts are bound to give all such statutes a strict construction, they are not required to violate the plain and unambiguous meaning of the Legislature in furnishing the remedy by motion.
The general rule of construction applicable to all statutes, is, to ascertain and express the true intention and meaning of the makers, and to that end, every part of the statute may be taken into consideration; and the words employed in the Act, are always to be taken in their natural and ordinary sense, without any forced or subtle construction to limit or extend their import: The State, ex-relator, vs. Clarksville & Red River Turnpike Company,. 2 Sneed, 88. Also, Bacon’s Abridgement, Title, Statutes.
Under this rule of universal application in the construction of statutes, can there be any doubt as to the real meaning of the fourth section of the Act of 1861, ch. 8? We think not. It is clear, construing it in connection with the Act of the 26th of January, 1861, to which it refers, and which must be taken in pari *246 materie with it, that the Legislature not only intended he benefits of this section, (the fourth section of the Act of 1861,) to be applied to all cases in which judgment debtors might avail themselves of the provisions of the Act of the 26th of January, 1861, ch. 2, but to exclude all other persons from its benefits.
. In the case under consideration, it is not pretended that the judgment debtors ever attempted to avail themselves of the provisions of the latter Act; and it follows as a necessary logical- consequence, that the officer cannot now claim the advantage of the former.
2d, It is further insisted, that after the assumed separation of the State from the- Federal Union, on the 6th of May, 1861, until the reorganization of the State Government in 1865, all Sheriffs and other collecting officers, were not bound to execute and return process, and as a consequence, cannot be held liable for a non-return, or an insufficient return. We cannot assent to this position. Treating the act of secession, “and all laws, ordinances, and resolutions, as well as all acts done in pursuance thereof, under the usurped State Government, after the declared independence of the State of Tennessee, as unconstitutional, null and void,” it does not follow, that there was no law in.force, but military law, in the mean time in the State. By the well recognized principles of International Law, the mere military occupation of a country, by a belligerent power, or a conquror, does not, ipso facto, displace the municipal laws. Such conqueror or belligerent occupier, may suspend or supersede, for the time being, the municipal laws; but in the absence of *247 all orders suspending or superseding them, they remain in force: Rutledge et al. vs. Fogg, Ex’r, 3 Cold., 554, and authorities cited.
The fourth section of the Schedule to the Amended Constitution recognizes, indirectly, this doctrine, and declares, that, “all judicial decisions made pursuant- to the laws of the State enacted previous to the 6th of May, 1861, shall be valid and binding between parties present in Court and litigating their rights.”
But, without saying more, it is a sufficient answer to this proposition, to say, that the defendant, by virtue of his office as sheriff of the county, received the process, and assumed to act under it, and by the plainest principles of law, as well as common morality, he was bound faithfully and promptly to obey all its mandates.
3d, It is also insisted that the remedy by motion is barred by the statute of limitations.
A motion being in the nature of an action, or suit, it is well settled, says this Court, in the case of Prewett vs. Hillaird, “that the Acts of limitations applicable to the several forms of action, should be held likewise to apply to motions:” 11 Hum., 423. So it has been holden, that a motion against an officer for failing to pay over money collected on a fi. fa., is not barred until after the lapse of six years, while a motion for a failure to make returns, or a false or insufficient return, would be barred in three years. And this, because, at common law, debt would lie in the former case, and only a special action on the case, in the latter; and( *248 the recovery would be in damages to the extent of the injury sustained: 11 Hum., 423.
But the Code has abolished all forms of actions; and, under the provisions of sec. 2775, it might be doubtful whether a motion against a sheriff for a non-return, or a false or insufficient return of process, was limited to three or six years. How this is, we do not now feel called upon to determine, as under the 4th section of the Schedule to the Amended Constitution, the statute of limitations, in this case, cannot be made availing.
Then, was the return of the sheriff a sufficient answer to the process? We think it was not. A sufficient return, is one which shows the sheriff has done what the writ commanded him to do, or some good reason why he has not done it: 10 Hum., 244; 1 Swan, 307. The command of the writ is, that he make the money out of the defendant’s property. His return in the case under consideration, is: “Satisfied in full in Confederate Treasury notes.” This is not money, or convertible bank notes, in the sense of either the Constitution and laws of the United States, or the State of Tennessee; and cannot, therefore, be held, in law, a sufficient response to the process.
It results, there is no error in the decree of the Chancellor, and it must be confirmed.